IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOHN LEE CONAWAY,           )
                                )
        Petitioner,        )
                                )
          v.                  )          1:98CV1117
                                )
MARVIN POLK, Warden, Central    )
Prison, Raleigh, North Carolina,     )
                                )
        Respondent.     )

## MEMORANDUM OPINION

BEATY, Chief District Judge.

       This matter is before the Court on Petitioner John Lee Conaway's Petition for Federal Habeas Corpus Relief following a mandate issued by the Court of Appeals for the Fourth Circuit remanding this case for an evidentiary hearing with regard to Petitioner's claim of "Juror Bias." Petitioner's claim of Juror Bias is based on his contention that one of the jurors in his case was closely related to one of Petitioner's co-defendants, who was a key prosecution witness. Petitioner thus contends that his Sixth Amendment right to an impartial jury was contravened because one of the jurors was biased against him as a matter of law, based on the juror's family relationship to Petitioner's co-defendant. This Court held an evidentiary hearing as directed by the Fourth Circuit, and based on the evidence presented, the Court makes the findings of fact set out below. Based on those findings of fact and the legal holdings and directions of the Court of Appeals for the Fourth Circuit in this case, Petitioner's Habeas Petition will be granted.

## I.    BACKGROUND INFORMATION

Petitioner was convicted in the Superior Court of Richmond County, North Carolina, on October 15, 1992, of the first-degree murders of Thomas Weatherford and Paul Callahan, and several related offenses. Three other individuals, Kelly Harrington, Michael McKinnon, and Kevin Scott (the "co-defendants") were also charged with the murders, and all three testified against Petitioner at his trial. In essence, the co-defendants each testified that while they were all responsible for kidnapping Mr. Weatherford and Mr. Callahan, it was Petitioner who had committed the murders. The jury convicted Petitioner and subsequently recommended imposition of the death penalty. After Petitioner was convicted, the murder charges against the co-defendants were dropped, and they each subsequently pled guilty to the lesser offense of kidnapping.[1]

One of the jurors at Petitioner's trial was Mr. Rannie Waddell, Jr. ("Juror Waddell"). Petitioner contends that Juror Waddell was a "double first cousin, once removed" of Kelly Harrington, one of the co-defendants who testified against Petitioner at trial. Specifically, Petitioner contends that Juror Waddell and the father of Kelly Harrington were double first cousins, whose mothers were sisters and whose fathers were brothers. Kelly Harrington was a key witness against Petitioner, and testified at trial that although he and the other co-defendants were involved in the kidnapping, it was Petitioner who committed the murders.

_____

[1] The facts surrounding Petitioner's conviction were detailed by the Court of Appeals for the Fourth Circuit in its opinion remanding this case to this Court. See Conaway v. Polk, 453 F.3d 567 (4th Cir. 2006). Therefore, this Court incorporates that summary by reference and need not repeat here all of the underlying factual details.

Kelly Harrington's testimony thus exculpated himself by implicating Petitioner. Juror Waddell was a member of the jury that heard Kelly Harrington's testimony and that ultimately convicted Petitioner and recommended imposition of the death penalty. During the jury selection at Petitioner's trial, the prosecutor read the list of witnesses expected to testify, including Kelly Harrington. The prosecutor asked if anyone knew the witnesses or recognized any of the names, and three members of the venire were excused for cause because they knew various witnesses, including one who explained that co-defendant Kevin Scott was her cousin. See Conaway v. Polk, 453 F.3d 567, 573 (4th Cir. 2006) (summarizing voir dire proceedings based on state court trial record). Juror Waddell acknowledged that he knew the Sheriff, who was listed as a witness, but denied knowing any other witness. Juror Waddell also denied that any family member of his had had any dealings with the District Attorney's office. Juror Waddell was ultimately selected for the jury.

In his Habeas Petition, Petitioner contends that Juror Waddell was, in fact, related to co-defendant Kelly Harrington, that Juror Waddell failed to disclose that he knew and was related to Kelly Harrington, and that Juror Waddell was therefore biased against Petitioner. Based on these contentions, Petitioner asserts that the presence of Juror Waddell on the jury violated Petitioner's Sixth Amendment right to trial by an impartial jury. This Court originally dismissed Petitioner's Habeas Petition by adoption of the Magistrate Judge's Recommended Decision concluding that Petitioner "had presented no evidence of actual bias and this relationship [between Juror Waddell and Kelly Harrington] is simply not close enough for bias to be presumed." However, Petitioner pursued his Juror Bias claim on appeal to the Court of Appeals

3

for the Fourth Circuit, and the Fourth Circuit concluded that Petitioner's contentions, if true, were sufficient to state a claim for violation of his Sixth Amendment rights. The Fourth Circuit therefore remanded the case to this Court with respect to the Juror Bias claim, specifically for a determination of the nature of the family relationship between Juror Waddell and co-defendant Kelly Harrington. Pursuant to the Fourth Circuit's mandate, this Court held an evidentiary hearing regarding these issues. Based on the evidence presented at the evidentiary hearing before this Court and with the parties' Supplemental Briefing, the Court makes the findings of fact set out below.

II.    FINDINGS OF FACT

A.    Nature of Family Relationship between Juror Waddell and Kelly Harrington

At the hearing, Petitioner presented evidence to establish that Juror Waddell was the first cousin of Theodore Roosevelt "Johnny" Harrington, father of co-defendant Kelly Harrington. Juror Waddell and Theodore Roosevelt Harrington ("Johnny Harrington") had the same maternal grandparents (Robert and Aggie McKay), and the mothers of Juror Waddell and Johnny Harrington were sisters. In addition, the fathers of Johnny Harrington and Juror Waddell were stepbrothers. Respondent does not dispute that these family relationships existed between Juror Waddell and Johnny Harrington. Therefore, it is undisputed that Juror Waddell and Johnny Harrington were first cousins, based on the fact that their mothers were sisters. In addition, because their fathers were also stepbrothers, Juror Waddell and Johnny Harrington were "double first cousins." Co-defendant Kelly Harrington is the son of Johnny Harrington. Therefore, it is undisputed that Juror Waddell and co-defendant Kelly Harrington were first

4

cousins once removed and were related to the fifth degree on the maternal side of Juror Waddell's family, and the Court so finds.

With respect to the nature of the relationship and connection between co-defendant Kelly Harrington and Juror Waddell, the evidence presented at the hearing established that Juror Waddell and Kelly Harrington's father, Johnny Harrington, were born a month apart and grew up together in the Diggs Chapel area of Wolf Pit Township in Richmond County, North Carolina. Throughout their lives, Juror Waddell and Johnny Harrington, who were cousins, were "extremely close, like brothers," according to the affidavit of Johnny Harrington presented at the evidentiary hearing in this matter. In his affidavit, Johnny Harrington stated that he "loved [Juror Waddell] as my brother and held him in the highest regard." Based on the evidence presented at the hearing, Juror Waddell and Johnny Harrington attended the same small high school, graduated in the same class, and remained close after graduating. After service in the military, Johnny Harrington and his family moved back to the same area of Richmond County in 1978. Johnny Harrington's son, Kelly Harrington, was born on July 29, 1972. Kelly Harrington lived with his father, Johnny Harrington, in the same small community as Juror Waddell from the time that Kelly Harrington was six years old.

At the time of the murders of Mr. Thomas Weatherford and Mr. Paul Callahan, Kelly Harrington was 19 years old. At that time, Juror Waddell and Kelly Harrington had lived in the same small community for the past 13 years. During that time, Kelly Harrington's father, Johnny Harrington, and Juror Waddell, who were first cousins, remained close and visited one another often.

5

Based on all of this evidence, the Court concludes that Juror Waddell and Kelly Harrington were legally related as first cousins once removed, related to the fifth degree on the maternal side of Juror Waddell's family, as noted above, and in addition the Court finds that their families were extremely close, with Juror Waddell and Kelly Harrington's father growing up together "like brothers," and continuing to visit one another often in the same small community where they lived as adults.

B.      Juror Waddell's Failure to Disclose the Family Relationship

The second factual issue before the Court is whether Juror Waddell failed to disclose this relationship during voir dire and then knowingly remained on the jury in a case involving his relative. As noted above, during voir dire prosecutors identified Kelly Harrington as a potential witness in the case, but Juror Waddell did not disclose the fact that he was related to Kelly Harrington. Instead, Juror Waddell indicated that he did not know any of the witnesses other than the Sheriff and did not recognize any of the names. Juror Waddell also responded negatively when asked if any of his family members had had any dealings with the District Attorney's office.

Juror Waddell has since died, and therefore cannot be examined to determine his intentions at that time or whether he was aware during voir dire that he was related to Kelly Harrington. At the evidentiary hearing before this Court, conflicting evidence was presented on this issue. Specifically, Juror Waddell's daughter, Celia McCoy ("Ms. McCoy"), testified that she does not believe that her father knew during the voir dire that he was related to the Kelly Harrington involved in Petitioner's trial. However, Juror Waddell's son, Michael Waddell, has

6

submitted an affidavit in which he confirms that Juror Waddell "knew that Kelly Harrington was the son of his first cousin, Theodore Roosevelt Harrington [Johnny Harrington], prior to serving on Mr. Conaway's jury," and the fact "[t]hat Kelly Harrington was the son of his first cousin is not something that my father would have easily forgotten." In addition, Petitioner presented evidence that Johnny Harrington's mother, Nancy McKay Harrington, who was Juror Waddell's aunt and who was not well enough to attend the hearing before this Court, was prepared to testify that Juror Waddell, her nephew, knew all of the children of her son, Johnny Harrington, including Kelly Harrington. This is consistent with the nature of the relationship between Johnny Harrington and Juror Waddell, who were cousins that were "extremely close, like brothers," in Johnny Harrington's words, and who grew up together and lived in the same small community with their families for over 13 years prior to Petitioner's trial. In addition, the Court notes that in September 1991, the local newspapers reported the arrests of Petitioner Conaway and Kelly Harrington, including front-page photographs of Kelly Harrington, who bears a strong resemblance to his father, Johnny Harrington. Significantly, Juror Waddell testified during the voir dire that he read about the arrests in the newspaper. Therefore, it is reasonable to conclude that Juror Waddell saw the photographs and recognized Kelly Harrington as the son of his cousin, Johnny Harrington, and Juror Waddell was therefore aware that his relative, Kelly Harrington, had been arrested and charged along with Petitioner Conaway long before Juror Waddell was called as a potential juror at Petitioner Conaway's trial. Having considered all of the evidence presented and available under the circumstances, and making credibility determinations as appropriate, the Court concludes by a preponderance of the evidence that

7

Juror Waddell knew that Kelly Harrington, who was a co-defendant and potential witness at trial, was his relative, specifically the son of his cousin, Johnny Harrington, but Juror Waddell failed to disclose that relationship during voir dire. Thus, the Court finds that Juror Waddell failed to answer honestly several material questions on voir dire, specifically when he denied knowing any witnesses other than the Sheriff, denied that any family member had dealings with the District Attorney's office, and denied any reason that would keep him from being fair and impartial.

In addition to failing to disclose the relationship during voir dire, Juror Waddell failed to disclose the relationship even after Kelly Harrington testified, at which time Juror Waddell certainly would have recognized Kelly Harrington as the son of his cousin Johnny Harrington. Moreover, it is undisputed that other members of the family, including Juror Waddell's daughter, Celia McCoy, directly confronted Juror Waddell regarding the inappropriateness of sitting on the jury of a case in which a family member was involved. Specifically, the Court finds that Ms. McCoy and two of her sisters confronted Juror Waddell and argued with him that he should not be sitting on the jury since their cousin, Kelly Harrington, was involved in the case. At the evidentiary hearing before this Court, Ms. McCoy testified that she went to visit Juror Waddell regarding his jury service, and that when she entered Juror Waddell's home, her older sister was already arguing with Juror Waddell regarding his service on the jury. Ms. McCoy testified that during this confrontation, she told Juror Waddell that "Johnny's son was involved in the crime that was committed" and that it was therefore not appropriate for Juror Waddell to serve on the jury. During this confrontation, according to Ms. McCoy, Juror Waddell became "heated," "got really upset," told his daughter she did not know what she was talking about, and said "this isn't

8

Kelly's trial. This is Conaway's trial." However, even after engaging in this confrontation with other family members regarding his presence on the jury, Juror Waddell failed to disclose to the court his familial relationship to Kelly Harrington, and instead continued to serve on the jury in Petitioner's case.

The Court notes that there is some dispute regarding when this confrontation between Juror Waddell and other family members occurred, although there is no dispute that this confrontation occurred at least prior to the sentencing phase of Petitioner's trial. In this regard, the Court notes that Petitioner's trial can be broken into three phases: the jury selection, which occurred from Tuesday to Friday, October 6-9, 1992; the guilt phase, which occurred on Monday through Thursday of the next week, October 12-15, 1992; and the sentencing phase, which occurred on the next Monday, October 19, 1992. At the evidentiary hearing before this Court, Juror Waddell's daughter, Ms. McCoy, stated that her confrontation with Juror Waddell occurred "during the sentencing," but she also noted that in 2000 when she was initially asked about this confrontation, she only "vaguely remembered" when the conversation occurred. At the evidentiary hearing, Ms. McCoy also testified that she learned "on a weekend" that Kelly Harrington was involved in the trial, and that she confronted her father early the next week, "possibly that Monday or Tuesday." At the evidentiary hearing, the Court inquired further as to when this discussion occurred, and Ms. McCoy confirmed that the discussion was "not before the trial began but before sentencing had begun in the case," and that Juror Waddell was still serving on the jury at the time of this discussion. In light of this testimony, and since the "sentencing phase" in Petitioner's case only lasted one day, beginning and ending on Monday,

9

October 19, 1992, the confrontation between Juror Waddell and his family members must have occurred before the sentencing on Monday, October 19, 1992.

In further considering when this confrontation may have occurred, the Court notes that Petitioner's attorneys received an anonymous telephone call on Saturday, October 10, 1992 after the jury had been selected but prior to the commencement of the guilt phase, informing them that Juror Waddell was a cousin of Kelly Harrington.[2] Thus, after the week of jury selection had concluded but prior to the commencement of trial, someone who knew that Juror Waddell had been selected as a juror and also knew of the familial relationship between Juror Waddell and Kelly Harrington was sufficiently concerned to make this anonymous telephone call to Petitioner's trial attorneys. This is consistent with the concern of other family members who confronted Juror Waddell directly regarding the inappropriateness of his service on the jury in a case involving another family member. This is also consistent with Ms. McCoy's testimony that she learned of her father's jury service and Kelly Harrington's connection to the trial "on a weekend" and then confronted her father early the next week. Under these circumstances, although the evidence is not definitive on this point, the Court concludes that based on a preponderance of the evidence presented, the confrontation between Juror Waddell and other family members, in which they discussed the fact that Kelly Harrington was Johnny Harrington's son, and in which Juror Waddell became "heated" and argued that it should not matter since this

---

[2] As discussed in Section IV below, Petitioner's attorneys subsequently brought this information to the attention of the trial judge and requested that they be allowed to question Juror Waddell regarding his relationship to Kelly Harrington, but the trial court denied their request.

10

was "Conaway's trial," likely occurred on Monday, October 12, 1992 or Tuesday, October 13, 1992, after the jury selection was completed and the trial had commenced, but prior to the conclusion of the guilt phase of Petitioner's trial. Therefore, the Court concludes that Juror Waddell knew of his family relationship to Kelly Harrington and had discussed the family relationship and his jury service on the case with other family members before the guilty verdict was returned in Petitioner's trial. Following his confrontation with Ms. McCoy and other family members, Juror Waddell did not bring the familial relationship to the attention of the trial court or anyone else involved in the case, and instead continued to sit on the jury and ultimately convicted Petitioner (based on evidence that included the testimony of Juror Waddell's cousin, co-defendant Kelly Harrington) and then recommended that Petitioner be sentenced to death.

Based on these findings, the Court concludes that not only did Juror Waddell fail to answer honestly several material questions on voir dire, but Juror Waddell did not disclose his family connection to the case even after other family members confronted him and argued that he should not be sitting on a jury where another family member was involved in the case, and even after his relative (Kelly Harrington) testified in the case. Because Juror Waddell has since passed away, it is impossible to determine his intent at the time or the reason that he failed to disclose the connection and continued to serve on the jury, even against the advice of other family members. However, under these circumstances, the Court concludes that while Juror Waddell may not have initially realized the inappropriateness of his actions, his insistence on staying on the jury and failing to bring this information to the attention of the court is evidence

11

of an intent to conceal his relationship to Kelly Harrington in order to remain on the jury and avoid being excused for cause.

III.   ANALYSIS AND CONCLUSIONS OF LAW

"The Sixth Amendment, made applicable to state criminal proceedings through the Fourteenth, affords an accused the right to trial by an impartial jury. . . . As the Supreme Court has observed, a 'touchstone of a fair trial is an impartial trier of fact -- a jury capable and willing to decide the case solely on the evidence before it.'" Conaway v. Polk, 453 F.3d 567, 582 (4th Cir. 2006) (quoting McDonough Power Equip. v. Greenwood, 464 U.S. 548, 554, 104 S. Ct. 845, 78 L. Ed. 2d 663 (1984)).  "The text of the Sixth Amendment mandates that '[i]n all criminal prosecutions, the accused shall enjoy the right to a ... trial[ ] by an impartial jury.'" Conaway, 453 F.3d at 584 (quoting U.S. Const. amend. VI).  "And the Supreme Court has long recognized that the Sixth Amendment prohibits biased jurors from serving on criminal juries." Conaway, 453 F.3d at 584 (citing United States v. Wood, 299 U.S. 123, 133, 57 S. Ct. 177, 81 L. Ed. 78 (1936) (recognizing that the Sixth Amendment's text prohibits partial jurors, whether bias is "actual or implied")).

In considering Petitioner's claim of Juror Bias in the present case, the Court notes that in its opinion remanding this case to this Court, the Court of Appeals for the Fourth Circuit laid out the applicable legal principles to be applied on remand.  In its Opinion, and as discussed in greater detail below, the Fourth Circuit held that if Petitioner could prove that Juror Waddell was related to co-defendant Kelly Harrington as alleged, and then concealed that family relationship in order to remain on the jury, then Juror Waddell would be considered biased as

12

a matter of law and that his presence on the jury necessarily violated Petitioner's Sixth Amendment rights. See Conaway, 453 F.3d at 584-89. The Fourth Circuit further concluded that to the extent the state courts failed to recognize this constitutional violation, the state court determination was an unreasonable application of federal law, and Petitioner's claim is therefore subject to federal habeas review. See id. Finally, the Fourth Circuit concluded that the error alleged by Petitioner was not harmless error, because the presence on the jury of a biased juror who was a relative of co-defendant Kelly Harrington would have affected Petitioner's substantial rights. See id. at 590-91. This Court will therefore proceed to analyze Petitioner's present claim of Juror Bias based on these determinations and principles set out by the Fourth Circuit in this case, in light of the factual findings that have now been made based on the available evidence.

In analyzing a claim of Juror Bias based on a contention that a juror was dishonest during voir dire, courts invoke the framework for Juror Bias claims set out in McDonough Power v. Greenwood. See McDonough Power Equip. v. Greenwood, 464 U.S. 548, 104 S. Ct. 845, 78 L. Ed.2d 663 (1984). Under that framework "a juror's bias may be established by showing (1) that the juror 'failed to answer honestly a material question on voir dire'; and (2) that 'a correct response [to that question] would have provided a valid basis for a challenge for cause.'" Conaway, 453 F.3d at 585 (quoting McDonough, 464 U.S. at 556) (the "McDonough test"). "Additionally, a litigant must show that the fairness of his trial was affected either by the juror's 'motives for concealing [the] information' or the 'reasons that affect [the] juror's impartiality.'" Conaway, 453 F.3d at 585 (quoting McDonough, 464 U.S. at 556).

13

In the present case, with respect to the first part of the McDonough test, that is, whether Juror Waddell "failed to answer honestly a material question on voir dire," this Court has found, based on the evidence presented, that Juror Waddell failed to disclose during voir dire that he was related to co-defendant and witness Kelly Harrington. In its opinion remanding this case, the Fourth Circuit noted that if "Juror Waddell knew he was related to co-defendant [Kelly] Harrington, and . . . Waddell failed to disclose this information" in light of "the multiple questions posed to Juror Waddell that could candidly be answered only by acknowledging his kinsman," then it would logically follow for the Court that Juror Waddell failed to answer honestly a material question on voir dire under the first prong of the McDonough test. Conaway, 453 F.3d at 585. Respondent does not contest this legal standard, but nevertheless contends that Juror Waddell did not know he was related to Kelly Harrington during the voir dire, and therefore did not answer dishonestly. However, this Court has concluded that, based on a preponderance of the evidence presented, Juror Waddell knew of his relation to Kelly Harrington at the time of voir dire, but did not acknowledge the family connection. Therefore, the Court concludes that Petitioner has satisfied the first prong of the McDonough test.

With respect to the second part of the McDonough test, that is, whether an honest answer would have provided a valid basis for a challenge for cause, the Fourth Circuit noted in its opinion remanding this case that the alleged relationship between Juror Waddell and Kelly Harrington would have provided a valid basis for a challenge for cause under both federal and state law. See Conaway, 453 F.3d at 586-88. In its analysis, the Fourth Circuit noted that "close kinship between a juror and a participant in a criminal trial constitutes a classic form of juror

14

partiality." Conaway, 453 F.3d at 586. Therefore, the Fourth Circuit concluded that if Juror Waddell and Kelly Harrington were related as alleged by Petitioner, Juror Waddell could have been challenged for cause because "Juror Waddell's familial relationship to Harrington was sufficiently close that Waddell's bias would have been 'implied' -- that is, presumed as a matter of law." Conaway, 453 F.3d at 586 (citing Wood, 299 U.S. at 133 ("The bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as [a] matter of law.")). The Fourth Circuit further noted that "[s]uch a presumption is justified where a juror is 'a close relative of one of the participants in the trial or the criminal transaction.'" Conaway, 453 F.3d at 586 (quoting Smith v. Phillips, 455 U.S. 209, 222, 102 S. Ct. 940, 71 L. Ed.2d 78 (1982) (O'Connor, J., concurring)). Thus, with respect to the second prong of the McDonough test, the Fourth Circuit noted that "[i]f Juror Waddell had responded candidly on voir dire about his relationship to co-defendant [Kelly] Harrington, the doctrine of implied bias would have provided Conaway with a valid basis for a challenge for cause." Conaway, 453 F.3d at 586.

Based on the evidence that has now been presented, this Court has found that Juror Waddell and co-defendant Kelly Harrington were legally related as first cousins once removed, related to the fifth degree on the maternal side of Juror Waddell's family, and in addition their families were extremely close, with Juror Waddell and Kelly Harrington's father growing up together "like brothers," and continuing to visit one another often in the same small community where they lived as adults. Therefore, based on this Court's finding regarding the nature and degree of the relationship between Juror Waddell and co-defendant Kelly Harrington, and

15

applying the standards set out by the Fourth Circuit in the opinion remanding this case, the Court concludes that the doctrine of implied bias would have given Petitioner a valid basis to challenge Juror Waddell for cause, and the second prong of the McDonough test is therefore satisfied.[3]

With respect to the final portion of the McDonough analysis, "[e]ven where, as here, the two parts of the McDonough test have been satisfied, a juror's bias is only established under McDonough if the juror's 'motives for concealing information' or the 'reasons that affect [the] juror's impartiality can truly be said to affect the fairness of [the] trial.'" Conaway, 453 F.3d at 588 (citing McDonough, 464 U.S. at 556). With respect to the application of this standard in the present case, the Fourth Circuit in its opinion remanding this case noted that if Petitioner could prove the family relationship between Juror Waddell and Kelly Harrington as alleged, "Juror Waddell's relationship to co-defendant [Kelly] Harrington necessarily affected the fairness of Conaway's trial. Put simply, Conaway's trial was a swearing match, with Conaway and his codefendants accusing each other of the heinous murders of Weatherford and Callahan. As the prosecutor acknowledged in his closing argument, the jury could not convict Conaway without crediting Harrington's version of events over that presented in Conaway's own testimony. . . . And as Lord Coke aptly observed, 'no matter how remote soever, ... the law presumeth that one kinsman doth favor another before a stranger.'" Conaway, 453 F.3d at 588-89 (quoting North

---

[3] In addition, the Court of Appeals for the Fourth Circuit also noted that North Carolina law would have provided a valid basis for challenging Juror Waddell for cause, since state law provides that a prospective juror may be challenged for cause if "related by blood or marriage within the sixth degree to the defendant or the victim of the crime." N.C. Gen. Stat. § 15A-1212(5); see also North Carolina v. Allred, 275 N.C. 554, 169 S.E.2d 833 (1969).

<u>Carolina v. Allred</u>, 275 N.C. 554, 169 S.E.2d 833 (1969) (quoting Thomas's Coke, 3 Vol. 518)). Thus, the Fourth Circuit has already determined that the family relationship alleged in this case necessarily affected the fairness of Petitioner's trial and would satisfy this portion of the <u>McDonough</u> test. The family relationship between Juror Waddell and Kelly Harrington has now been established, based on the evidence presented and as set out in the Court's findings above. Therefore, this Court concludes that based on these factual findings and the principles set out by the Fourth Circuit, Juror Waddell's relationship to Kelly Harrington necessarily affected the fairness of Conaway's trial.

In addition, with further respect to this final portion of the <u>McDonough</u> analysis and the juror's "motives for concealing information," this Court has concluded that Juror Waddell was aware of his relationship to Kelly Harrington during the trial, and not only did Juror Waddell fail to answer honestly on voir dire, but Juror Waddell failed to bring this relationship to the attention of the trial court or anyone else involved in the trial, even after other family members confronted him regarding the relationship and the inappropriateness of serving on a jury in a case involving a family member. Based on these actions, the Court has found that Juror Waddell deliberately failed to disclose his family relationship to Kelly Harrington because he wanted to remain on the jury and did not want to be removed for cause. The fact that Juror Waddell "concealed crucial information in order to serve on Conaway's jury" is further evidence of bias. <u>Conaway</u>, 453 F.3d at 588. Therefore, based on this Court's factual findings and the specific legal principles set out by the Court of Appeals for the Fourth Circuit in the decision remanding this case to this Court, the Court concludes that Petitioner has satisfied the <u>McDonough</u> test in

17

its entirety and has established a violation of his Sixth Amendment right to a "trial[ ] by an impartial jury."

Moreover, even if the Court accepts Respondent's contention that Juror Waddell did not initially realize during voir dire that the Kelly Harrington identified as a witness was his relative, and if the <u>McDonough</u> framework were not employed in these circumstances, the Fourth Circuit has noted that the <u>McDonough</u> framework "did not foreclose the normal avenue of relief available to a party who is asserting that he did not have the benefit of an impartial jury. . . . After <u>McDonough</u>, it remains within a trial court's option, in determining whether a jury was biased, to order a post-trial hearing at which the movant has the opportunity to demonstrate actual bias or, in exceptional circumstances, that the facts are such that bias is to be inferred." <u>United States v. Fulks</u>, 454 F.3d 410, 431-32 (4th Cir. 2006) (internal quotations and citations omitted).[4] "The doctrine of implied bias is a principle limited in application to those extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." <u>Fulks</u>, 454 F.3d at 432 (internal quotations omitted).

---

[4] The Court notes that the <u>McDonough</u> test can be applied "equally to deliberate concealment and to innocent non-disclosure." <u>Jones v. Cooper</u>, 311 F.3d 306, 310 (4th Cir. 2002). However, where a claim of Juror Bias is made and the juror may have been honest but mistaken during the voir dire, the Fourth Circuit has considered the claim outside of the <u>McDonough</u> framework and has noted that "[t]he <u>McDonough</u> test is not the exclusive test for determining whether a new trial is warranted" because "regardless of whether the juror was truthful or deceitful," a showing of actual bias, or in "exceptional circumstances" implied bias, "can also entitle a defendant to a new trial." <u>Id.</u>; <u>Fulks</u>, 454 F.3d at 432. Therefore, in the alternative, this Court has also considered Petitioner's Juror Bias claim outside of the <u>McDonough</u> framework.

18

"Examples of such situations include revelations that the juror is a close relative of one of the participants in the trial or the criminal transaction." <u>Fulks</u>, 454 F.3d at 432 (internal quotations omitted).

With respect to the application of "implied bias" in the present case, the Fourth Circuit in its opinion remanding this case to this Court specifically held that if Petitioner established the familial relationship as alleged, "Juror Waddell's familial relationship to Harrington was sufficiently close that Waddell's bias would have been 'implied' -- that is, presumed as a matter of law." <u>Conaway</u>, 453 F.3d at 586 (concluding that the familial relationship alleged by Petitioner would constitute "exceptional circumstances" where juror bias would be implied as a matter of law). Based on the evidence that has now been presented, this Court has concluded that Juror Waddell was related to Kelly Harrington as alleged. Even if the Court accepted the contention that Juror Waddell did not initially realize during voir dire that Kelly Harrington was his relative, the evidence nevertheless establishes that during Petitioner's trial and prior to the rendering of the verdict in this case, other family members confronted Juror Waddell regarding the inappropriateness of his service on a jury in a case involving a relative. Therefore, during Petitioner's trial, Juror Waddell was aware that Kelly Harrington was the son of his cousin, Johnny Harrington, with whom Juror Waddell was close "like brothers." Under these exceptional circumstances, based upon the legal standards set out by the Fourth Circuit in this case, this family connection would constitute "implied bias" or bias as a matter of law as to Juror Waddell because Juror Waddell was a "close relative of one of the participants in the trial or the criminal transaction" and "it is highly unlikely that the average person could remain impartial in

19

his deliberations under the circumstances." Fulks, 454 F.3d at 432 (internal quotations omitted). Therefore, consistent with the standards and conclusions set out by the Fourth Circuit in this case, this Court concludes that even if the McDonough framework is not employed here, Juror Waddell was nevertheless biased as a matter of law and Petitioner's Sixth Amendment rights were therefore violated because Petitioner did not have the benefit of an impartial jury.[5]

The Court notes that Respondent contends that Petitioner nevertheless received a fair trial and sentencing. In support of this contention, Respondent points to evidence presented against Petitioner beyond just Kelly Harrington's testimony, in an effort to establish that any error in including Juror Waddell on the jury was harmless. However, the Court of Appeals for the Fourth Circuit has already considered this contention, and specifically held that "Conaway has alleged that he was convicted and sentenced to death by a jury that included a primary accuser's double first cousin, once removed" and if the allegations were established as alleged, "we need not labor to conclude that such a serious constitutional injury affected Conaway's substantial rights." Conaway, 453 F.3d at 590. In light of this determination by the Fourth

_____

[5] The Court notes that the confrontation itself between Juror Waddell and other family members while the trial was ongoing could raise questions of potential prejudice. "In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." Remmer v. United States, 347 U.S. 227, 229, 74 S. Ct. 450, 98 L. Ed. 654 (1954). However, in the present case, because juror bias has already been established under the standards set by the Court of Appeals for the Fourth Circuit, the Court need not consider whether this private discussion about the trial and Juror Waddell's jury service, while he was still serving on the jury, created an additional basis to find prejudice to the Petitioner.

20

Circuit, and based on this Court's findings here, this Court concludes that Juror Waddell's presence on the jury had a substantial or injurious effect or influence in determining the verdict in Petitioner's case, and at the very least, there is grave doubt as to the harmlessness of the error. Cf. Fitzgerald v. Greene, 150 F.3d 357, 365 (4th Cir. 1998) (noting that the presence of a biased juror is not harmless error if the court is "convinced that the error had substantial and injurious effect or influence in determining the verdict . . . or entertain[s] grave doubt that it had such an effect." (internal quotations and citations omitted)). In this case, the essence of Petitioner's trial was, as noted by the prosecutor during closing, whether the jury believed Petitioner's version of events or the co-defendants' version of events. In these circumstances, Juror Waddell's presence on the jury, as a relative of one of those co-defendants, at least raises grave doubt as to the harmlessness of the error.

Finally, the Court notes that pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this Court may only grant habeas corpus relief on a claim adjudicated on the merits by a state court if the state court's ruling was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). However, in its opinion remanding this case to this Court, the Fourth Circuit has previously concluded that the state court's prior rejection of Petitioner's Juror Bias claim involved an unreasonable application of clearly established federal law as determined by the Supreme Court. See Conaway, 453 F.3d at 584-85, 589. Specifically, the Fourth Circuit held that if Petitioner could prove the familial

relationship alleged between Juror Waddell and Kelly Harrington, then Petitioner had stated a constitutional claim for relief under clearly established federal law, and the state court's rejection of the claim was unreasonable. See Conaway, 453 F.3d at 584-85, 589. Because the allegations have now been established as alleged, the Court finds and concludes that Petitioner is therefore entitled to habeas relief.

IV.    ISSUE OF WAIVER OR PROCEDURAL BAR

Having addressed the matters as set out by the Fourth Circuit in the decision remanding this case to this Court, the Court notes that Respondent raised one additional issue during the evidentiary hearing in this case. Specifically, counsel for Respondent argued that Petitioner should be "procedurally barred" from raising his Juror Bias claim on habeas review because on October 10, 1992, after the jury was selected and before Petitioner's trial was to begin on Monday morning, October 12, 1992, Petitioner's trial attorney received an anonymous telephone call at his office, informing his secretary that Juror Waddell was a cousin of co-defendant Kelly Harrington. However, Petitioner's trial attorneys did not have any information to confirm this family connection, other than the anonymous telephone call. Petitioner's trial attorneys ultimately brought the anonymous telephone call to the attention of the trial judge on October 19, 1992, prior to the sentencing phase of Petitioner's trial. At that time, Petitioner's trial counsel sought to inquire directly of Juror Waddell whether he was related in any way to co-defendant Kelly Harrington, although counsel acknowledged that they did not have any information beyond the anonymous telephone call to confirm the claim. Because they had only the anonymous telephone call, the state trial judge refused to allow Petitioner's counsel to

22

inquire further.  On Petitioner's direct appeal of his conviction and sentence in state court, the North Carolina Supreme Court held that based on Petitioner's "critical delay in bringing this alleged telephone call to the trial court's attention and the lack of evidence to substantiate this alleged anonymous telephone call, the trial court did not abuse its discretion in denying defendant's motion to voir dire juror Waddell about his possible relationship to Kelly Harrington."  North Carolina v. Conaway, 339 N.C. 487, 519, 453 S.E.2d 824, 844 (1995).

Respondent did not present any additional information or evidence on this point during the evidentiary hearing in this case.  However, relying on a portion of the concurring opinion in the Fourth Circuit decision remanding this case to this Court, Respondent contends that defense counsel "suffered" the biased juror to stay on the jury, and cannot now be heard to complain, based on trial counsel's delay in bringing the information to the attention of the trial judge.  Specifically, Respondent points to Judge Widener's concurring opinion in the Fourth Circuit decision in this case, in which Judge Widener states that he is "convinced that, on this record, Conaway and his attorneys suffered Waddell to be on the jury and cannot now take advantage of any error relating to his sitting."  Conaway, 453 F.3d at 593 (Widener, J., concurring).  In this concurring opinion, Judge Widener concludes that this case should have been remanded for a determination of Petitioner's waiver of the Juror Bias claim, rather than a determination of the merits of the claim.  See Conaway, 453 F.3d at 592-93; see also McDonough, 464 U.S. at 551 n.2 (noting that if the information regarding the juror's bias was "known to respondents or their counsel at the time of the voir dire examination" then "respondents would be barred from later challenging the composition of the jury when they had

23

chosen not to interrogate [the juror] further upon receiving an answer which they thought to be factually incorrect").

However, the majority's opinion in the Fourth Circuit decision remanding the case to this Court specifically addressed the North Carolina Supreme Court's decision and Judge Widener's concurrence on this issue, but the majority's opinion dismissed these concerns, concluding that "[t]he State . . . has never asserted that this nine-day delay constituted a procedural default" and "[i]n any event, the delay [by trial counsel in raising this information] would not constitute a procedural default, as 'the last state court' to which Conaway presented the Juror Bias claim (the MAR Court) 'did not clearly and expressly rely on' -- or indeed even reference -- the delay." Conaway, 453 F.3d at 584 n.18. Moreover, the Fourth Circuit's majority opinion remanded the case to this Court to make factual findings regarding the nature of the familial relationship between Juror Waddell and Kelly Harrington, and the majority opinion remanding this case did not include as part of the remand a direction to consider whether Petitioner had waived this claim or was procedurally defaulted or barred from raising the Juror Bias claim based on the delay by his trial attorneys in raising the anonymous telephone call at the state trial court. Therefore, it appears that this issue was not part of the remand in this case and based on the majority's opinion, no procedural bar or waiver would preclude the habeas relief Petitioner is now seeking.

Moreover, even to the extent this issue could be properly before this Court as part of the remand,  the Court finds that the State has not presented any additional evidence on this point and has not established that Petitioner's trial attorneys were engaging in any type of deliberate

24

strategy by failing to raise the potential Juror Bias concern sooner with the state trial judge.[6] Instead, the evidence would indicate that Petitioner and his trial attorneys did not know of Juror Waddell's relationship to Kelly Harrington during the voir dire itself, and they did not have any basis on which to challenge Juror Waddell's statements at the time of the voir dire. When Petitioner's trial attorneys received the anonymous telephone call, after the jury had already been selected, they did not intentionally choose to leave Juror Waddell on the jury or allow him to remain there as part of any defense strategy. Instead, the Court would find that Petitioner's trial counsel did not immediately report this information to the trial court simply because they did not have any information to confirm the claim beyond the anonymous telephone call. Petitioner's attorneys did attempt to raise the information with the trial court before the capital sentencing phase proceeded, but they were prevented from even making inquiry of Juror Waddell regarding the information they had received. In denying their request, the state trial judge asked them if they had any legal authority for making such an inquiry based solely on an anonymous telephone call, which they admitted they did not. Likewise, the prosecutor indicated that he did not need to be heard unless the defense had "more than an anonymous phone call." Therefore, the Court finds that defense counsel failed to raise Juror Waddell's potential family

_____

[6] The Court notes that all of the evidence on this issue was part of the record in this case previously considered by the Fourth Circuit on appeal, and no additional evidence has been presented. The Fourth Circuit's majority opinion did not treat the Juror Bias claim as having been waived based on the evidence in the record, and instead remanded this case to this Court for factual findings on the nature of the familial relationship between Juror Waddell and Kelly Harrington. In this regard, the Court notes that a remand on the nature of the family relationship between Juror Waddell and Kelly Harrington would not have been necessary if the evidence in the record had been sufficient to establish that Petitioner waived his right to even assert the Juror Bias claim.

connection sooner due simply to an inability to confirm the veracity of the information, and in anticipation of reluctance by the state trial court to even consider defense counsel's concern based solely on the anonymous telephone call. Thus, to the extent that this issue is even properly before the Court on remand, this Court finds that trial counsel's delay in raising their concerns regarding Juror Waddell was not a deliberate strategy that would prevent them from now raising the Juror Bias claim in this case. As the Court of Appeals for the Fourth Circuit noted, Petitioner has attempted to raise his concern regarding Juror Waddell not only before the trial judge, but also at every collateral proceeding in state and federal court, but his efforts were thwarted "by reluctant witnesses and unreceptive courts." Conaway, 453 F.3d at 589. Under these circumstances, the Court concludes that Petitioner did not "suffer" Juror Waddell to remain on the jury or otherwise waive his inclusion on the jury. Therefore, the Court finds that Petitioner's Juror Bias claim has not been waived and is properly presented before this Court.

V.     CONCLUSION

Based on the findings and conclusions set out above, the Court concludes that Petitioner's Sixth Amendment rights were violated by the presence of a biased juror on the jury in his case. The presence of the biased juror affected the fairness of Petitioner's trial, and there is at least grave doubt that the presence of the biased juror had a substantial and injurious effect or influence in determining the verdict in Petitioner's case. The Court further concludes that under the Fourth Circuit's prior decision in this case, the state court's determination that Petitioner had failed to state any violation of his Sixth Amendment rights was an unreasonable

26

application of clearly established federal law, and Petitioner's claim was not procedurally barred or waived.

Therefore, based on these determinations, Conaway's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 must be and hereby is GRANTED. Respondent is directed to retry or release Petitioner from custody within 120 days of the entry of this Order. See Hilton v. Braunskill, 481 U.S. 770, 775, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987) ("[F]ederal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation."). If Respondent chooses to appeal this decision to the United State Court of Appeals for the Fourth Circuit, Respondent may move pursuant to Federal Rule of Civil Procedure 62(c) for a stay pending appeal.

An Order and Judgment consistent with this Memorandum Opinion will be entered contemporaneously herewith.

This, the 24 day of October, 2008.

James A. Beaty

United States District Judge